**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

PAUL ZAWADZKI,

    Plaintiff,

v.                                                         Case No. 8:12-cv-950-T-30MAP

LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

    Defendant.
_____/

## **ORDER**

THIS CAUSE comes before the Court upon Defendant's Motion for Final Summary Judgment (Dkt. 11) and Plaintiff's Response in opposition (Dkt. 14). The Court, having reviewed the motion, response, and being otherwise advised of the premises, concludes that the motion should be denied.

## **INTRODUCTION**

This is an action for damages arising out of an insurance policy Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual") issued to Plaintiff Paul Zawadzki. Plaintiff contends that his property suffered damages consistent with sinkhole activity; a covered cause of loss. The issue before the Court on Liberty Mutual's summary judgment motion is whether a 2011 amendment to the Florida statutory scheme governing sinkhole insurance that added a statutory definition of "structural damage" should be applied retroactively to the insurance policy at issue. The Court concludes that Liberty Mutual's

summary judgment motion should be denied because retroactive application of the 2011 statutory definition of "structural damage" would impair Plaintiff's vested contractual rights under the policy. *See Bay Farms Corp. v. Great American Alliance Ins. Co.*, 835 F. Supp. 2d 1227 (M.D. Fla. 2011).

## BACKGROUND

At all material times, Zawadzki owned the property located at 211 Lexington Street, Oldsmar, Florida (the "subject property"). Liberty Mutual insured the subject property under policy number H32-251-656334-0000 (the "subject policy"), with effective dates of November 13, 2010 through November 13, 2011. The subject policy provides coverage for Sinkhole Loss as follows:

**SECTION 1 - PERILS INSURED AGAINST**

The following perils are added:

**Sinkhole Loss**

a.  Sinkhole Loss means structural damage to the building, including the foundation, caused by sinkhole activity. Contents coverage shall apply only if there is structural damage to the building caused by sinkhole activity.

(1) We will pay to stabilize the land and building and repair the foundation in accordance with the recommendations of a professional engineer and in consultation with you.

b.  Sinkhole Activity means settlement or systematic weakening of the earth supporting such property only when such settlement or systematic weakening results from movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

The SECTION I - Earth Movement exclusion does not apply to this peril. (Dkt. 11-1; page 30 of 50).

While the policy was in effect, Zawadzki made a claim with Liberty Mutual for damage to the subject property that was consistent with sinkhole activity. Liberty Mutual retained an engineer to conduct an evaluation of the subject property in order to determine whether structural damage existed at the subject property. After performing various testing at the subject property, Liberty Mutual's expert, SDII Global Corporation ("SDII"), opined that the subject property did not exhibit structural damage "as defined by § 627.706(2)(k) Florida Statutes". (Dkt. 11-2). SDII also concluded that "[t]he observed damage on the exterior and interior of the structure is cosmetic in nature, in that the damage has not impaired the ability of the structure to support intended loads." *Id.*

On October 11, 2011, Liberty Mutual denied coverage for the subject damage based on SDII's findings. On November 8, 2011, Zawadzki's counsel requested that Liberty Mutual perform full geotechnical testing at the subject property. On November 17, 2011, Liberty Mutual declined to perform the geotechnical testing.

On February 8, 2012, Zawadzki's expert, BillerReinhart Structural Group, Inc., issued a report indicating that, based on its peer review of the data contained in SDII's report, structural damage exists at the subject property.

Notably, the subject policy does not define the term "structural damage." Moreover, the subject policy does not purport to incorporate by reference any existing statutory

definitions, nor does it include language expressly making changes to statutory definitions retroactively applicable to claims arising under the subject policy.

Zawadzki filed suit against Liberty Mutual in Florida state court for an alleged breach of the subject policy. The state court action was removed to this Court on April 30, 2012. In addition to its answer and affirmative defenses, Liberty Mutual filed a counterclaim for declaratory judgment. Liberty Mutual's counterclaim asserts that the language of the subject policy provides no coverage for the damages claimed by Zawadzki unless that loss includes structural damage. Liberty Mutual urges the Court to accept the 2011 amendment to the Florida statutory scheme governing sinkhole insurance that added a statutory definition of "structural damage."

## **SUMMARY JUDGMENT STANDARD OF REVIEW**

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine

the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson,* 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248; *Hoffman v. Allied Corp.,* 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## **LEGISLATIVE HISTORY OF FLORIDA'S SINKHOLE STATUTE**

From 1981 through 2004, Fla. Stat. § 627.706(1) required that insurers make coverage available for sinkhole loss. *Bay Farms Corp.*, 835 F. Supp. 2d at 1230-33 (citing Fla. Stat. § 627.706). During that time, the definition of "sinkhole loss' incorporated the definition of

"sinkhole." *Id.* Additionally, the statute contained a separate definition of the term "loss" as "structural damage to the building." *Id.*

In 2005, the Florida Legislature redefined a "sinkhole loss" as "structural damage to the building, including the foundation, caused by sinkhole activity." *Id.* The 2005 definition incorporated the previous definition of the term "loss" and that term was removed from the statute. *Id.* The 2005 version also added definitions for other terms such as "sinkhole" and "sinkhole activity." *Id.* A separate definition for the term "structural damage" was not included. *Id.*

In 2011, the Legislature, for the first time, adopted a definition of "structural damage" to be applied when interpreting insurance policies providing coverage for sinkhole losses. *Id.* The 2011 Amendment went into effect on May 17, 2011, pursuant to the Enabling Act. As amended, section 627.706 provides:

> (j) "Sinkhole loss" means structural damage to the covered building, including the foundation, caused by sinkhole activity. Contents coverage and additional living expenses apply only if there is structural damage to the covered building caused by sinkhole activity.
>
> (k) "Structural damage" means a covered building, regardless of the date of its construction, has experienced the following:
>
> 1. Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement-related damage to the interior such that the interior building structure or members become unfit for service or represents a safety hazard as defined within the Florida Building Code;
>
> 2. Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code,

which results in settlement-related damage to the primary structural members or primary structural systems that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those primary structural members or primary structural systems exceeds one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

3. Damage that results in listing, leaning, or buckling of the exterior load-bearing walls or other vertical primary structural members to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

4. Damage that results in the building, or any portion of the building containing primary structural members or primary structural systems, being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

5. Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

## **DISCUSSION**

"The question of whether a statutory change in the law should be applied retroactively is governed by state law." *Rivera v. Wal–Mart Stores E., LP,* No. 3:10–cv–956–J–20TEM, 2011 WL 7575393, at *2 (M.D. Fla. Jan.13, 2011) (citing *Turner v. United States,* 514 F.3d 1194, 1199 n. 3 (relying upon Florida law to determine retroactive application of Florida statutory amendment)).  The Supreme Court of Florida has applied a two-part analysis for determining when a substantive statutory amendment should be applied retroactively to an insurance policy issued prior to the amendment. *See, e.g., Menendez v. Progressive Express*

*Ins. Co.,* 35 So. 3d 873, 877 (Fla. 2010). First, the court must determine whether the Legislature intended for the statute to apply retroactively. Second, if such intent is clearly expressed, the Court must determine whether retroactive application would violate any constitutional principles. *Id.; see also Rivera,* 2011 WL 7575393, at *2 (quoting *Menendez* and applying same inquiry); *Fla. Hosp. Waterman, Inc. v. Buster,* 984 So. 2d 478, 487 (Fla. 2008) (same). "The presumption against retroactive application is a well-established rule of statutory construction that is appropriate in the absence of an express statement of legislative intent." *Fla. Ins. Guar. Ass'n, Inc. v. Devon Neighborhood Ass'n, Inc.,* 67 So. 3d 187, 195 (Fla. 2011).

In *Bay Farms Corp.*, the Honorable James D. Whittemore, considered and rejected the same argument that Liberty Mutual asserts in this case, to wit, that the 2011 Amendment to Florida Statute § 627.706 should apply retroactively to insurance policies that predate the enactment of the 2011 Amendment. The Court agrees with Judge Whittemore's well-reasoned order. In pertinent part, Judge Whittemore held as follows:

> [A] plain reading of the 2011 Amendment reveals that the new definition of "structural damage" is a substantive change as its retroactive application would adversely affect and impair the right of sinkhole policyholders, including Bay Farms. *See Arrow Air, Inc.,* 645 So. 2d at 424 ("[the Supreme Court of Florida] has never classified a statute that accomplishes a remedial purpose by creating substantive new rights or imposing new legal burdens as the type of 'remedial' legislation that should be presumptively applied in pending cases"); *see also Menendez,* 35 So. 3d at 880 (holding statutory presuit notice provision was "substantive," not "procedural" and should not be given retroactive application); *Hassen,* 674 So. 2d at 108 (Fla. 1996) (statute requiring under insured motorist carrier to pay amount of offer from liability insurer within 30 days in order to preserve subrogation claim

was not procedural or remedial change, but rather was substantive amendment operating prospectively, not retroactively). In this case, the technical definition of "structural damage" in the 2011 Amendment significantly narrows the definition of "sinkhole loss," which in turn narrows Bay Farms' rights under the Policy. Indeed, the substantive nature of the 2011 Amendment is readily evidenced by Great American's own position in this litigation. That is, Great American recognizes that absent the new statutory definition of "structural damage," there would be covered losses to buildings on the Insured Property. *See* Deposition of Tom Miller (Dkt. 45–1), pp. 74–77, 78, 83, 119.

In an apparent attempt to overcome the undisputed fact that retroactively applying the 2011 Amendment would adversely impact Bay Farms' entitlement to coverage under the Policy, Great American argues that the 2011 Amendment simply "clarified" the definition of "sinkhole loss" by adding a definition of "structural damage." That is, Great American argues, the 2011 Amendment merely revised section 627.706 to conform the plain language of the statute with what the Legislature purportedly intended in 2005 when it first amended the definition of "sinkhole loss" to incorporate the term "structural damage." This contention flies in the face of reason and is inapposite to well-established Florida law.

Florida courts have recognized that while "later legislative amendments meant to change a law should not be given retroactive effect, ... where the statute is being clarified, such later amendment may also be looked upon as stating what was the original legislative intent." *Kaplan v. Peterson,* 674 So. 2d 201, 205 (Fla. 5th DCA 1996) (holding that pre-amendment version of statute gave rise to a private cause of action when statute was subsequently amended to clarify legislative intent to allow private causes of action). In this case, however, the 2011 Amendment cannot reasonably be viewed as a mere clarification to the definition of "sinkhole loss" intended to make the definition correspond to what had previously been supposed or assumed to be the law. As the Senate Analysis noted, there was at best uncertainty as to the meaning of "structural damage" and "sinkhole loss" prior to the 2011 Amendment.

The terms "sinkhole loss" and "structural damage" were originally used by the Legislature in 1981 when it first mandated that insurance companies offer coverage for sinkhole losses. Tellingly, while the statutory provision including those terms was amended on at

least six occasions prior to the 2011 Amendment (including on at least three separate occasions between 2005 and 2011), it was not until 2011 when the Legislature adopted the restrictive definition of "structural damage." As a result, Great American's contention that the 2011 Amendment was merely meant to clarify the Legislature's intention with respect to the meaning of "sinkhole loss" and "structural damage" is tenuous, at best. *See Laforet,* 658 So.2d at 62 (noting that "it would be absurd to consider legislation enacted more than ten years after original act as clarification of original intent"); *see also Kaisner v. Kolb,* 543 So. 2d 732, 738 (Fla. 1989) ("subsequent legislatures, in the guise of 'clarification,' cannot nullify retroactively what a prior legislature clearly intended").

The fact that the Enabling Act may be read to label the 2011 Amendment as a clarification (*i.e.,* a clarification of the "technical" or "scientific" definition of "sinkhole loss") is not controlling. "Just because the Legislature labels something as being remedial ... does not make it so." *Laforet,* 658 So. 2d at 61. In this case, a more reasonable reading of the Enabling Act is that the new definition of "structural damage" was a revision "enacted to advance legislative intent to rely on scientific or technical determinations relating to sinkholes and sinkhole claims [and] reduce the number and cost of disputes relating to sinkhole claims ...." *See* 2011 Fla. Sess. Law. Serv. Ch. 2011–39, § 21; *cf. In re Eastport Associates,* 935 F.2d 1071, 1080 (9th Cir. 1991) (holding that legislature did not intend retroactive application of statute when legislative history indicated that amendment "expands" and "redefines" definition in statute).

In short, the 2011 Amendment does more than just clarify a statutory definition—it adds a new definition of "structural damage" that would substantially limit an insurance company's liability for damage resulting from sinkholes by narrowing the definition of a covered "sinkhole loss." *Compare State ex rel. Szabo Food Services, Inc. of North Carolina v. Dickinson,* 286 So. 2d 529, 531 (Fla. 1973) (holding that amendment to sales and use tax statute which provided, *inter alia,* that food and drink sold ready for immediate consumption from vending machines would be an exception to the general exemption from taxation of food and drink was not a change in the law, but rather a clarification of original legislative intent).

835 F. Supp. 2d at 1236-38 (internal footnotes omitted).

Judge Whittemore also noted that: "In this case, neither the express language of the Enabling Act nor the legislative history provide clear evidence of legislative intent in favor of retroactive application of the 2011 Amendment." *Id.* at 1241. Finally, Judge Whittemore held that even if the Florida Legislature had clearly evidenced its intent to retroactively apply the 2011 Amendment, the Court must still consider whether such application would violate the Florida and/or U.S. Constitution. *Id.* at 1241-42. He concluded that the 2011 Amendment would result in an "immediate diminution" in the value of the policy to the insured, which the Florida Supreme Court has repeatedly recognized as being "repugnant" to the Florida Constitution. *Id.* (internal citations and quotations omitted).

As discussed in *Bay Farms*, Judge Whittemore's holding that the 2011 Amendment does not apply retroactively is consistent with a recent state court decision, which similarly refused to retroactively apply the 2011 Amendment, as well as a letter from the Florida Department of Financial Services directing Neutral Evaluators to apply the pre-May 17, 2011 definitions when a sinkhole claim is made under a policy with an effective date prior to May 17, 2011. (Dkt. 14, Exhibits D and E).

Finally, with respect to Liberty Mutual's remaining arguments about the definition of "structural damage," the Court concludes that the phrase "structural damage" should be read according to its plain meaning as the court recently held in *Ayres v. USAA Casualty Insurance Company*, 2012 WL 1094321 (M.D. Fla. April 2, 2012). In *Ayres*, the Honorable Susan C. Bucklew held that the phrase "structural damage" is defined as "damage to the structure." *Id.* at *3-*4. The Court sees no reason to depart from this ruling, which is

consistent with a number of Florida state circuit court cases with respect to the definition of "structural damage" prior to the 2011 Amendment. *Id.* at *3. And under this definition of "structural damage," the findings of the parties' respective experts demonstrate that there is a genuine issue of material fact as to whether structural damage is present at the subject property.

It is therefore ORDERED AND ADJUDGED that Defendant's Motion for Final Summary Judgment (Dkt. 11) is DENIED.

**DONE** and **ORDERED** in Tampa, Florida on August 23, 2012.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2012\12-cv-950.msj11.frm